IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling Division

> ELECTRONICALLY FILED
> 10/04/2021
> U.S. DISTRICT COURT
> Northern District of WV

**ANDREW KING**,

    Plaintiff,

v.

**JASON K. UTT** and **FRIEND ESTEP**, individually and in their capacity as agents and employees of the City of New Martinsville,

and

**CITY OF NEW MARTINSVILLE**, a West Virginia political subdivision,

    Defendants.

Civ. Act. No. 5:21-CV-__171__ **(Bailey)**
**JURY TRIAL DEMANDED**

## COMPLAINT

NOW COMES the Plaintiff, Andrew King, by and through his undersigned counsel, Robert G. McCoid, Esq., of McCoid Law Offices, P.L.L.C., and, pursuant to 42 U.S.C. § 1983, the federal Constitution, and the Constitution and laws of the State of West Virginia, for his cause of action against Defendants, Jason K. Utt and Fred Estep, individually and in their capacity as agents and employees of the City of New Martinsville, and the City of New Martinsville, West Virginia, pleads and avers as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. 1331 over the constitutional claims contained in this Complaint as well as the claims arising under 42

U.S.C. 1983. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

2. Venue is proper as Plaintiff's claims arise out of the acts of law enforcement officials from the Northern District.

**Parties**

3. Plaintiff is an adult individual who at all times relevant was a resident of New Martinsville, West Virginia.

4. Defendant City of New Martinsville (hereinafter, "New Martinsville" or "New Martinsville Police Department.").

5. New Martinsville is responsible for the New Martinsville Police Department which is located at 193 Main St, New Martinsville, WV 26155 and is responsible for the appointment, employment and oversight of department staff and facility operations generally and for the handling of out of state warrants.

6. Defendant, Jason K. Utt, is a police officer in the employ of the New Martinsville Police Department.  Officer Utt is sued in his individual capacity and in his official capacity.

7. Defendant, Friend Estep, is a police officer in the employ of the New Martinsville Police Department.  Officer Estep is sued in his individual capacity and in his official capacity.

## II. CASE BACKGROUND

8. Plaintiff initially filed this case against the above listed Parties in the Western District of Pennsylvania at 2:19-CV-00992-DSC.

9. The Western District ruled in an Opinion dated October 5, 2020, that Plaintiff did not have personal jurisdiction over the above listed Defendants and dismissed those Defendants without prejudice. The Opinion of the Court is attached hereto as **Exhibit "A"** and made a part hereof.

10. Plaintiff's case continues in the Western District of Pennsylvania as to his claims against the Allegheny County Sheriff's Office and Allegheny County, arresting officer Vincent DiCenzo, and North Versailles Township. Allegheny County has since been dismissed.

11. Plaintiff brings this Complaint pursuant to the West Virginia Savings statute, W. Va. Code § 55-2-18, which allows for the refiling of a complaint that was filed in a timely manner which was not dismissed on the merits.

## III. FACTS

12. On April 21, 2018, Plaintiff was taken into custody by officers Jason K. Utt and Friend Estep of the New Martinsville Police Department based on an arrest warrant erroneously issued in Allegheny County.

13. Officers Estep and Utt had reason to believe that they were arresting the wrong individual.

14. This warrant was issued due to the recklessly sloppy police work of the North Versailles Township's Arresting Officer DiCenzo, the policies and practices of North Versailles Township and the policies and practices of the Allegheny County Sheriff's Office.

15. Plaintiff was taken into custody based on a bench warrant for his brother who had been previously arrested by Officer DiCenzo of North Versailles Township in Pennsylvania.

16. Plaintiff immediately stated to the Defendants Utt and Estep that he was not the correct individual being sought in Allegheny County and that in fact the correct individual was his twin brother, Alexander King.

17. Officer Utt stated that nonetheless he would need to take Plaintiff into custody and that Plaintiff, "had permission to kick his twin brother's butt."

18. Officers from New Martinsville proceeded to arrest Plaintiff as he was the individual who was named in the warrant they were serving.

19. Because of recklessly sloppy police work, Plaintiff was the victim of a mistaken identity police arrest and was taken into custody and held in jail for six days.

20. Plaintiff spent approximately one evening at the New Martinsville Police Department and six days at Northern Regional Correctional Facility.

21. During his incarceration Plaintiff routinely stated to all officials and all Defendants that he was being wrongfully detained and incarcerated and that the correct party was his brother.

22. Plaintiff and his brother do not look similar. Additionally, Plaintiff's brother is known to both the New Martinsville Police Department and Northern Regional Correctional Facility as Alexander King has previously been detained by both institutions. Whereas Plaintiff is not known to these institutions and is a law-abiding citizen.

23. Further, Plaintiff's brother is known to arresting officers Utt and Estep.

24. The differences between Plaintiff and his brother are numerous. They are fraternal twins and look dissimilar. Andrew King has long hair whereas Alexander King has short hair and a receding hair line. The brothers have different eye colors and Plaintiff has numerous tattoos on his arm and leg whereas Alexander King does not.

25. Plaintiff's brother had used Plaintiff's information before, meaning that the Defendants knew or should have known that Alexander King had a history of providing false information to authorities and they should have acted appropriately in dealing with warrants regarding Plaintiff's brother.

26. Plaintiff did not appear to match the recent booking photograph of his brother; the physical descriptors on the warrant were different from Plaintiff's; their eye color is different; and, finally, Plaintiff's fingerprints did not match to those of the warrant's intended subject.

27. It is believed and therefore averred that the North Versailles Township and Officer DiCenzo were reckless in their handling of the arrest and processing of Plaintiff's twin brother as the warrant issued for Plaintiff's arrest would not have been issued if it contained the correct information

regarding the individual who was actually detained by the North Versailles Township and Officer DiCenzo.

28. There is an obvious risk that law enforcement officers will carry out mistaken identity arrests or cause the arrest of an innocent person who is not the person named in the warrant or is not the person for whom probable cause to arrest exists.

29. On information and belief, the policy makers for the Defendants are aware of the risk of mistaken identity arrests based on previous lawsuits and news stories. Nevertheless the Defendants failed, through deliberate indifference, to adopt and implement policies, procedures, supervision and training that would have eliminated or minimized the risk of mistaken identity arrests.

30. By failing to correct deficiencies in policies, procedures, supervision and training that were so likely to result in unjustified deprivations of liberty, Defendants demonstrated deliberate indifference to the protections of Plaintiff's rights. Defendants' deliberately indifferent failures caused the Plaintiffs' injuries.

31. In cases in which the Defendants or the courts determine that a "mistaken identity" arrest has occurred, the Defendants failed to adopt, implement, or enforce procedures that would communicate information about the mistake to the officers who were responsible for serving warrants, or to their supervisors or to third parties.

32. Even after a victim of a mistaken identity arrest such as Plaintiff managed to gain release from custody, the Defendants failed to adopt, implement or enforce policies and procedures that would ensure that the victim's name was cleared.

33. Plaintiff and his girlfriend and mother contacted Defendants and officials from Pennsylvania multiple times, specifically making numerous phone calls to all Defendants, stating that they were illegally holding the wrong individual and that the warrant in question was issued erroneously. Defendants still failed to make a reasonable investigation or actively ignored findings of such an investigation.

34. Plaintiff's girlfriend contacted the prosecutor in Plaintiff's case in Pennsylvania on numerous occasions to explain that the wrong man had been arrested.

35. Plaintiff's girlfriend also contacted Defendant New Martinsville Police Department, specifically New Martinsville Police Chief Tim Cecil, on numerous occasions.

36. Rather than investigate or act upon the findings of an investigation related to Plaintiff's allegations that he was not the correct party and that he was being wrongfully held, the Defendants allowed Plaintiff to continue to be detained and failed to make a reasonable investigation.

37. A quick investigation by any named Defendant would have revealed that the wrong man was unlawfully being held in custody.

38. Additionally, it has been averred by Arresting Officer DiCenzo and the City of New Martinsville in the concurrent case that, on or about April 20, 2018, Defendant Estep actually did attempt a preliminary investigation by contacting the North Versailles Police Department, in North Versailles Township, Pennsylvania. (Case 2:19-cv-00992-DSC-CRE Document 58, Paragraph 49).

39. In doing so, Defendant Officer Estep informed "Officer DiCenzo that they had in custody Andrew King on a warrant from the Allegheny County Sheriff Department. [Defendant Officer Estep] further related that Andrew King was claiming he had never been arrested in Pennsylvania and that his twin brother, Alexander King, had falsely given his name as Andrew King to the Defendant North Versailles police.  Based, in part, upon additional information provided by Sergeant Estep, later that day... [Officer DiCenzo] informed Sergeant Estep that they had arrested the wrong individual." (Case 2:19-cv-00992-DSC-CRE Document 58, Paragraph 49)

40. "Sergeant Estep responded that they were going to incarcerate him anyway at their County facility due to the outstanding warrant." (Case 2:19-cv-00992-DSC-CRE Document 58, Paragraph 49)

41. Despite knowledge that Andrew King was not the correct individual the Defendants acted with deliberate indifference in choosing to place him under custody.

42. Even a simple fingerprint or photo comparison would have revealed that the Defendants were holding the wrong individual.

43. Plaintiff is a law-abiding citizen with unique identifiers different from his brother. It should have been readily apparent that Plaintiff was not the individual that was identified by the warrant issued in Allegheny County.

44. Despite these numerous requests to officials from Pennsylvania and the Defendants and knowledge that the arresting officer believed that the New Martinsville Defendants were attempting to arrest the wrong individual, there was no investigation, an investigation was not done to a reasonable extent, or an investigation into Plaintiff's arrest was directly ignored and he was forced to fend for himself in prison for six days.

45. While in prison Plaintiff faced threats of physical violence and rape, denial of essential medication and extreme hardship.

46. Upon being released from Northern Regional the Defendants and officials from Pennsylvania failed to remove the warrant in Plaintiff's name resulting in further harm.

47. On the 25th of April 2018 it was determined that Plaintiff was not the correct individual and was being held in custody without cause. There is no indication in any records why this determination could not have been made earlier or why Plaintiff continued to be wrongfully detained even after this determination.  There was, however, an indication of records showing that this determination was made earlier and the Defendants failed to immediately act to fix the mistake or investigate further.

48. Shortly after release from Northern Regional, Plaintiff was detained for a second time by the State Game Warden and the West Virginia State Police

due to an outstanding warrant meant for his brother but was released shortly thereafter.

49. Plaintiff was detained in the hot sun for roughly an hour and then cuffed and taken to the State Police Barracks for approximately another hour.

50. In January of 2019 Plaintiff was pulled over in Washington, Pennsylvania, tackled to the ground and again detained for the alleged arrest warrant in his name for a third time.

51. The Defendants and officials from Pennsylvania compounded their error by failing to properly correct it and by failing to remove the warrant in Plaintiff's name.

52. Plaintiff has a clearly established right under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from unreasonable seizure of his person, a right that the Defendants violated by incarcerating him for six days and allowing him to be detained on a second and third occasion.

53. As a result of the above conditions and treatment and as a direct, factual and proximate result of the behavior of the Defendants, Plaintiff has suffered the following injuries:

   a. Plaintiff endured great pain and suffering and was rendered severely physically and emotionally distressed.

   b. He was denied essential medication causing him extreme agony and discomfort.

   c. Plaintiff has been denied his most basic right, his personal freedom.

d. Plaintiff suffered emotional injury and psychological trauma for which he currently receives treatment and for which he is currently prescribed medication.

e. Plaintiff has incurred economic damage including a loss of gainful employment and damage to his reputation.

f. He may sustain a loss in earning capacity.

g. He has been and may in the future be unable to enjoy the various pleasures of life.

h. He has been required and may continue in the future to treat with various medical providers, physicians and mental health specialists.

## IV. COUNT I
## 42 U.S.C. § 1983 – False Arrest/Fourth Amendment

54. Plaintiff repeats and realleges each and every allegation contained in the paragraphs previously set forth.

55. Plaintiff's arrest and imprisonment on the aforementioned warrant violated his Fourth Amendment rights in that as alleged above, from the face of the warrant material and dispositive discrepancies existed between Plaintiff's identifiers and those listed on the warrant such that Plaintiff could not be the warrant's intended subject.

56. Defendants did not have probable cause to believe that Plaintiff was the warrant's intended subject and, in fact, had conclusive evidence Plaintiff was not the warrant's intended subject, but took no steps to correct their

error and no steps to prevent the misidentification and his arrest.

57. As a result of the practices and/or policies of officials in Pennsylvania, an illegal and invalid warrant was processed, served and acted upon by Defendants New Martinsville Police Department, Officer Utt, and Officer Estep.

58. Defendants New Martinsville PD, Officer Utt, and Officer Estep all acted or failed to act in a manner that would correct the error which led to Plaintiff being arrested and detained.

59. Plaintiff notified the Defendants that he was not the proper party. Defendants had the power and authority to investigate readily available information that would have confirmed that Plaintiff was the victim of a mistaken identity arrest, and they had the power and authority to correct the mistake but declined to do so.

60. It is believed and therefore averred that the practices and policies of the Defendants are to blame for the false arrest of Plaintiff and as such Defendants New Martinsville Police Department, Officer Utt, and Officer Estep are liable because the wrongful acts were pursuant to policies, practices and/or customs described above, approved and/or ratified by the agencies' respective policymakers.

61. The policies and conduct of the Defendants violated Plaintiff's right to be free from unreasonable searches and seizures of his person in violation of the Fourth Amendment of the United States Constitution.

62. The Defendants acted willfully, maliciously, and/or with reckless

disregard of the consequences of their actions and as such Plaintiff is entitled to punitive damages.

63. The Defendants acted intentionally in their failure to act on the phone calls of Plaintiff's friends and family which further compounded their error. Moreover, the Defendants have practices or policies that amount to deliberate indifference to Plaintiff's constitutional right to not be detained.

## V. COUNT II
## 42 U.S.C. § 1983 – Wrongful Incarceration/Fourteenth Amendment

64. Plaintiff repeats and realleges each and every allegation contained in the paragraphs previously set forth.

65. Plaintiff's arrest and imprisonment on the aforementioned warrant violated his Fourteenth Amendment rights in that as alleged above, in that material and dispositive discrepancies existed between Plaintiff's identifiers and those listed on the warrant such that Plaintiff could not be the warrant's intended subject.

66. Nonetheless the Defendants' various actions and omissions caused Plaintiff to be incarcerated for six days.

67. It is believed and therefore averred that official and reliable law enforcement information showed that Plaintiff could not possibly be the warrant's intended subject as shown by the non-matching identifiers and by information provided by other law enforcement officials.

68. Law enforcement personnel had easy access with virtually no appreciable

effort or cost, to reliable official information that excluded Plaintiff as the subject of the warrant but they allowed him to be incarcerated in violation of the Fourteenth Amendment of the United States Constitution.

69. Plaintiff notified the Defendants that he was not the proper party. Defendants had the power and authority to investigate readily available information that would have confirmed that Plaintiff was the victim of a mistaken identity arrest, and they had the power and authority to correct the mistake but declined to do so.

70. The Defendants are further liable because the wrongful acts were pursuant to policies, practices and/or customs described above, approved and/or ratified by the agencies' respective policymakers.

71. The Defendants acted willfully, maliciously, and/or with reckless disregard of the consequences of their actions and as such Plaintiff is entitled to punitive damages.

72. The Defendants acted intentionally in their failure to adequately act on the phone calls of Plaintiff's friends and family which further compounded their error. Moreover, the Defendants have practices or policies that amount to deliberate indifference to Plaintiff's constitutional right to be free from incarceration.

## VI. COUNT III
## 42 U.S.C. § 1983 - Due Process of  Law

73. Plaintiff repeats and realleges each and every allegation contained in the

14

paragraphs previously set forth.

74. The Defendants failed to investigate Plaintiff's claims of innocence, or if they did investigate they failed to take adequate steps to correct the mistaken identity arrest.

75. No reasonable law enforcement official could have believed that there was probable cause to believe that Plaintiff was the person named in the warrant.

76. Defendants had the power and authority to investigate readily available information that would have confirmed that Plaintiff was a victim of a mistaken identity arrest and they had the power and authority to correct the mistake but declined to do so.

77. Defendants were acting consistently with and pursuant to the policies of New Martinsville.

78. Their actions as stated above constituted a due process violation, but their continued failure to act after being made aware of their actions constituted a continued due process violation each time they were made aware of Plaintiff's situation but failed to act.

79. The policies of the Defendants denied Plaintiff of due process of law in violation of the Fourteenth Amendment.

**VII. COUNT IV**
**42 U.S.C. § 1983 – Excessive Force**

80. Plaintiff repeats and realleges each and every allegation contained in the paragraphs previously set forth.

15

81. In negligently, wantonly, recklessly, unlawfully, intentionally and/or maliciously battering and arresting Plaintiff irrespective of the legality of his arrest, Defendants, in derogation of Plaintiff's right to be free from unreasonable searches and seizures as guaranteed by U.S. CONST. AMD. IV, while acting under color of the laws of the State of West Virginia and otherwise, used excessive and unnecessary force on Plaintiff's person, thereby depriving Plaintiff of his civil rights, including his rights secured and guaranteed to him under U.S. CONST. AMDS. I, IV, and XIV and W. VA. CONST. ART. III, § 6, within the meaning of 42 U.S.C. § 1983 and otherwise.

82. In acting as aforesaid, Defendants proximately caused Plaintiff to sustain, and continue to sustain, losses and damages, including physical harm, extreme fear, torment and suffering of his body and mind, embarrassment, loss of enjoyment of life, humiliation, aggravation and inconvenience, unlawful deprivation of his civil rights under color of state law, and other losses and damages, including, but not limited to, damage to his reputation. Additionally, Plaintiff sustained pecuniary losses and damages in the form of lawyer fees and associated costs relative to defending the criminal charges against him and lost wages.

83. The Defendant, City of New Martinsville and its supervisory and managerial agents, in permitting Defendants Utt and Estep to continue to function as a law enforcement officer in light of his prolific pattern of constitutional violations and unlawful conduct under color of State law as aforesaid, of which the City and its supervisory and managerial agents had

16

actual and extended knowledge, maliciously and intentionally exhibited deliberate indifference to a pattern of constitutional violations by Defendants Utt and Estep as aforesaid, thus encouraging, acquiescing in, and condoning his unlawful and unconstitutional conduct.  By ratifying said acts and in acquiescing in and condoning the unlawful and unconstitutional conduct of Defendants Utt and Estep, the City further deprived Plaintiff of his civil rights, including rights secured and guaranteed to him under U.S. CONST. AMDS. 1, 4 and 14 and W. VA. CONST. ART. III, § 6.

84. In acting as aforesaid, the Defendants, jointly and severally, proximately caused Plaintiff, to sustain, and continue to sustain, losses and damages, including physical harm, extreme fear, torment and suffering of his body and mind, embarrassment, humiliation, aggravation and inconvenience, loss of liberty, unlawful deprivation of his civil rights under color of state law, and other losses and damages, including, but not limited to, damage to his reputation.

### VIII. COUNT V
### Negligent Retention and Hiring

85. Plaintiff repeats and realleges each and every allegation contained in the paragraphs previously set forth.

86. The Defendant City of New Martinsville hired and/or later retained Defendants Utt and Estep as employees when it knew or in the exercise of due and reasonable diligence and care should have known of their

17

proclivity for violating the civil rights of the citizenry.

87. As a direct and proximate cause of City of New Martinsville's retention of Defendants Utt and Estep as aforesaid, Plaintiff suffered and sustained damages, including extreme fear, torment and suffering of his body and mind, embarrassment, humiliation, aggravation and inconvenience, loss of liberty, and other losses and damages, including, but not limited to, pecuniary losses in the form of past and future medical treatment.

## IX. COUNT VI
## Negligent Training and Supervision

88. Plaintiff repeats and realleges each and every allegation contained in the paragraphs previously set forth.

89. The City of New Martinsville negligently failed to provide adequate training to, and engage in meaningful supervision of Defendants Utt and Estep commensurate with the training and supervision accorded by law enforcement agencies to law enforcement employees in various areas, including, but not limited to, assessment of probable cause to arrest, dealing with verbally assertive citizens, arresting citizens properly, and investigating the circumstances under which arrests may be properly made.

90. As a direct and proximate result of the failure of the City of New Martinsville to provide such supervision and training as aforesaid, Plaintiff sustained losses and damages, including extreme fear, torment and

suffering of his body and mind, embarrassment, humiliation, aggravation and inconvenience, loss of liberty, and other losses and damages, including, but not limited to, pecuniary losses and damages in the form of past and future medical expenses.

## X. COUNT VII
## Tort of Outrage/Intentional Infliction of Emotional Distress

91. Plaintiff repeats and realleges each and every allegation contained in the paragraphs previously set forth.

92. Defendants bullied Plaintiff and acted toward Plaintiff in a manner which was atrocious, utterly intolerable in a civilized community, and so extreme and outrageous as to exceed all possible bounds of decency and with intent to inflict emotional distress on Plaintiff, or, alternatively, Defendants acted recklessly in such manner, when it was certain or substantially certain that such distress to Plaintiff would result from Defendants' conduct, thereby proximately causing Plaintiff to suffer emotional distress which was so severe that no reasonable person could be expected to endure it.

93. As a direct and proximate cause of the acts and omissions of Defendants, as aforesaid, Plaintiff sustained and continues to sustain damages, including physical harm, extreme fear, torment and suffering of his body and mind, embarrassment, loss of enjoyment of life, humiliation, aggravation and inconvenience, loss of wages, loss of liberty, unlawful deprivation of his civil rights under color of state law, and other losses and

19

damages, including, but not limited to, damage to his reputation.

## XI. COUNT VIII
### Battery

94. Plaintiff repeats and realleges each and every allegation contained in the paragraphs previously set forth.

95. Defendants, in acting as aforesaid, battered Plaintiff, and thereby proximately caused Plaintiff to sustain damages and losses, including, but not limited to, physical harm, extreme fear, torment and suffering of his body and mind, embarrassment, humiliation, aggravation and inconvenience, loss of wages, loss of liberty, and other losses and damages.

96. As a direct and proximate cause of the acts and omissions of Defendants, as aforesaid, Plaintiff sustained and continues to sustain damages, including damage to his reputation, severe emotional trauma, physical pain, counsel fees, emotional pain and suffering, embarrassment, humiliation, loss of enjoyment of life, loss of wages, loss of liberty, aggravation and inconvenience, and other losses and damages.

## XII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, prays for:

Declaratory judgment that Defendants violated Plaintiff's constitutional, civil and statutory rights;

An Order enjoining Defendants from enforcing their customs, policies, patterns and practices as described herein that violate constitutional rights;

20

An award of appropriate compensatory and punitive damages against each Defendant in favor of Plaintiff;

Awards of attorney's fees, costs, and litigation expenses associated with the prosecution of this action;

For such other and further relief as the Court may deem proper.

Respectfully submitted,

**ANDREW KING**,
Plaintiff.

By: ___/s/*Robert G. McCoid*___
       Of Counsel

Robert G. McCoid, Esq.
West Virginia Bar I.D. No. 6714
**McCOID LAW OFFICES, P.L.L.C.**
Post Office Box 1
56-58 Fourteenth Street
Wheeling, WV 26003
(304) 242-2000
(304) 232-3548 (telefax)
robert@mccoidlaw.com